# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

**JANE DOE**,

     Plaintiff,

v.                                     No. 5:21-cv-00977-DNH-ML

**SYRACUSE UNIVERSITY, et al.**,

    Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

David W. DeBruin
N.D.N.Y. Bar. No. 603019
Lauren J. Hartz
N.D.N.Y. Bar. No. 701646
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Phone: 202-639-6000
Fax: 202-639-6066
ddebruin@jenner.com
lhartz@jenner.com

Allison N. Douglis
N.D.N.Y. Bar. No. 704713
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Phone: 212-303-2505
Fax: 212-891-1699
adouglis@jenner.com

*Counsel for Defendants Syracuse University, John Wildhack, John Desko, and Kayla Treanor*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 3

    A.    Doe's Reports And The University's Responses ........................................ 3

    B.    Prior Proceedings ........................................................................................ 5

    C.    Doe's First Amended Complaint .............................................................. 8

STANDARD OF REVIEW .................................................................................................. 9

ARGUMENT ....................................................................................................................... 10

I.     The FAC Fails To State A Claim For Breach Of Contract. ................................. 10

II.    The FAC Fails To State A Claim For Negligence. ............................................... 13

    A.    New York Law Recognizes Only Limited Circumstances Under Which Students May Bring Negligence Claims Against Their Universities. ................... 14

    B.    Doe Cannot Ground A Negligence Claim In The University's Investigation. ................................................................................................ 16

    C.    Defendants Did Not Breach Any Duty To Prevent Scanlan's Misconduct. .......... 17

    D.    Doe's Theory Based On Negligent Hiring, Training, Retention, And Supervision Fails For Additional Reasons. ............................................... 19

    E.    Doe's Separate Count For Respondeat Superior Must Be Dismissed. ................. 22

III.   The FAC Fails To State A Claim For Negligent Infliction Of Emotional Distress. ................................................................................................................ 22

IV.   These Claims Should Be Dismissed With Prejudice. .......................................... 24

CONCLUSION .................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*AA by BB v. Hammondsport Central School District*, 527 F. Supp. 3d 501 (W.D.N.Y. 2021) ............................................................................................21

*Ahluwalia v. St. George's University*, 626 F. App'x 297 (2d Cir. 2015) ....................................20

*Alaei v. State University of New York at Albany*, No. 1:21-CV-377, 2022 WL 4094450 (N.D.N.Y. Sept. 7, 2022) ......................................................................22

*Alexander v. Westbury Union Free School District*, 829 F. Supp. 2d 89 (E.D.N.Y. 2011) ....................................................................................................................22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................9

*Baker v. Dorfman*, 239 F.3d 415 (2d Cir. 2000) .......................................................................22

*Blazquez v. City of Amsterdam*, No. 1:21-CV-1286, 2023 WL 2164516 (N.D.N.Y. Feb. 22, 2023) ..........................................................................................20

*Brown v. University of Rochester*, 216 A.D.3d 1328 (3d Dep't 2023) ..............................18, 19

*Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496 (S.D.N.Y. 2018) .......................................20

*Capak v. Street Execs Management*, No. 1:20-CV-11079, 2021 WL 2666007 (S.D.N.Y. June 29, 2021) ........................................................................................21

*Chira v. Columbia University in New York City*, 289 F. Supp. 2d 477 (S.D.N.Y. 2003) ....................................................................................................................13

*Cooper v. State*, 89 A.D.2d 811 (4th Dep't 1982) .....................................................................17

*D'Entremont v. Atlas Health Care Linen Services, Co., LLC*, No. 1:12-CV-0060, 2013 WL 998040 (N.D.N.Y. Mar. 13, 2013) ...........................................................24

*Doe v. Hobart & William Smith Colleges*, 546 F. Supp. 3d 250 (W.D.N.Y. 2021) ...............15, 16

*Doe v. New York City Department of Education*, No. 1:21-CV-4332, 2023 WL 2574741 (E.D.N.Y. Mar. 20, 2023) ....................................................................21

*Doe v. Syracuse University*, 341 F. Supp. 3d 125 (N.D.N.Y. 2018) ..........................................11

*Doe v. Syracuse University*, No. 5:18-CV-377, 2019 WL 2021026 (N.D.N.Y. May 8, 2019) ....................................................................................................................12

*Doe v. Syracuse University*, 440 F. Supp. 3d 158 (N.D.N.Y. 2020) ...........................................16

*Doe v. Syracuse University*, No. 22-2674, 2023 WL 7391653 (2d Cir. Nov. 8, 2023) ................................................................................................6, 7, 8, 19, 24

*Doe #1 v. Syracuse University*, 468 F. Supp. 3d 489 (N.D.N.Y. 2020) ......................................12

*Doe v. Union College*, No. 1:19-CV-284, 2020 WL 1063063 (N.D.N.Y. Mar. 5, 2020) .............................................................................13, 14, 15, 17, 22, 23

*Dolgas v. Wales*, 215 A.D.3d 51 (3d Dep't 2023)................................................................22, 23, 24

*Ehrens v. Lutheran Church*, 385 F.3d 232 (2d Cir. 2004) ......................................................20

*Eiseman v. State*, 70 N.Y.2d 175 (1987)...................................................................14, 17, 19

*Farb v. Baldwin Union Free School District*, No. 2:05-CV-0596, 2006 WL 8439500 (E.D.N.Y. Mar. 3, 2006) .................................................................22

*In re Facebook, Inc., Initial Public Offering Derivative Litigation*, 797 F.3d 148 (2d Cir. 2015)..................................................................................................9

*Faiaz v. Colgate University*, 64 F. Supp. 3d 336 (N.D.N.Y. 2014)....................................10, 17, 18

*Fat Brands Inc. v. Ramjeet*, 75 F.4th 118 (2d Cir. 2023) ..............................................20

*Gally v. Columbia University*, 22 F. Supp. 2d 199 (S.D.N.Y. 1998) ....................................12

*Hammond v. Lincoln Technical Institute, Inc.*, No. 1:10-CV-1933, 2012 WL 273067 (E.D.N.Y. Jan. 30, 2012) ...........................................................14

*Hores v. Sargent*, 230 A.D.2d 712 (2d Dep't 1996) ...........................................................17

*Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018)...............................................................................9

*Lauer v. City of New York*, 95 N.Y.2d 95 (2000) ............................................................24

*Lloyd v. Alpha Phi Alpha Fraternity*, No. 96-CV-348, 1999 WL 47153 (N.D.N.Y. Jan. 26, 1999) ....................................................................................18

*Marbury v. Pace University (In re Columbia Tuition Refund Action)*, 523 F. Supp. 3d 414 (S.D.N.Y. 2021) ................................................................10

*McCarthy v. Olin Corp.*, 119 F.3d 148 (2d Cir. 1997) .....................................................14

*Meissner v. Syracuse University*, No. 5:20-CV-839, 2021 WL 1536676 (N.D.N.Y. Apr. 13, 2021) ..................................................................................10

*Moore v. Long Island University*, No. 2:20-CV-3843, 2022 WL 203988 (E.D.N.Y. Jan. 24, 2022) .................................................................................10, 11

*Noakes v. Syracuse University*, 369 F. Supp. 3d 397 (N.D.N.Y. 2019) ..........................10, 11, 16

*Novartis Pharma AG v. Regeneron Pharmaceuticals, Inc.*, 582 F. Supp. 3d 26 (N.D.N.Y. 2022) ...........................................................................................................25

*P.R.B. v. State*, 201 A.D.3d 1237 (3 Dep't 2022) ......................................................19

*Posso v. Niagara University*, 518 F. Supp. 3d 688 (W.D.N.Y. 2021)..........................15

*Prasad v. Cornell University*, No. 5:15-CV-322, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016) ..........................................................................................................17

*Rich v. Fox News Network, LLC*, 939 F.3d 112 (2d Cir. 2019)...................................20

*Richardson v. New York University*, 202 A.D.2d 295 (1st Dep't 1994).......................21

*Rolph v. Hobart & William Smith Colleges*, 271 F. Supp. 3d 386 (W.D.N.Y. 2017) ...........................................................................................................12, 17

*Shukla v. Deloitte Consulting LP*, No. 1:19-CV-10578, 2020 WL 3181785 (S.D.N.Y. June 15, 2020)..............................................................................................20

*Silman v. Utica College*, No. 6:14-CV-432, 2016 WL 4275721 (N.D.N.Y. Aug. 12, 2016) ...........................................................................................................16

*In re Tribune Co. Fraudulent Conveyance Litigation*, 10 F.4th 147 (2d Cir. 2021) ....................25

*Ward v. New York University*, No. 99-CV-8733, 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000) ...........................................................................................................11

*Wilson v. Diocese of New York of Episcopal Church*, No. 1:96-CV-2400, 1998 WL 82921 (S.D.N.Y. Feb. 26, 1998)........................................................................21

*Wojchowski v. Daines*, 498 F.3d 99 (2d Cir. 2007) .....................................................10

**STATUTES**

20 U.S.C. § 1681 .............................................................................................................1

N.Y. Educ. Law § 6440(1)............................................................................................15

**OTHER AUTHORITIES**

34 C.F.R. § 106.6 ..........................................................................................................16

34 C.F.R. § 106.44 ........................................................................................................15

34 C.F.R. § 106.44(a)....................................................................................................17

34 C.F.R. § 106.44(c)................................................................................................17

34 C.F.R. § 106.45................................................................................................15

34 C.F.R. § 106.45(b)(3)(i)....................................................................................16

*Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026 (May 19, 2020) ....................16

## <u>INTRODUCTION</u>

Over two years ago, Plaintiff "Jane Doe" sued Syracuse University and two of its employees, claiming they failed to respond appropriately to reports she made about misconduct by a fellow student with whom she had a relationship.  According to Doe, the University's alleged actions and omissions violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and breached legal duties under state law.  The District Court (Sharpe, J.) dismissed the federal claims with prejudice and declined supplemental jurisdiction over the remaining state-law claims. Doe appealed, and the Court of Appeals affirmed in all respects but one.  Like the District Court, the Second Circuit carefully examined Doe's 86-page complaint and concluded that its allegations showed a prompt and thorough response by the University to both of Doe's two reports, which complied with Title IX and its implementing regulations.  The University responded immediately to those reports, imposed "No Contact Orders" to prevent further contact between the students, and ultimately brought Title IX charges on behalf of the University when Doe herself declined to do so.  The Second Circuit remanded a single theory of liability for retaliation based on Doe's allegations that, several months *after* Doe's reports and in response to conversations she initiated about potentially transferring to another institution, two employees allegedly urged Doe to leave and suggested her scholarship might not continue.

Now on remand, Doe is seeking not only to litigate the Title IX retaliation claim, but also to relitigate all the issues the District Court and Second Circuit previously resolved against her by repackaging her failed federal claims under state-law causes of action.  In her new First Amended Complaint ("FAC"), the same alleged actions and omissions that Doe previously challenged as "deliberate indifference" under Title IX are now labeled as breach of contract, negligence, and negligent infliction of emotional distress.  But regardless of Doe's labels, these claims fail for the

same reasons the District Court and Second Circuit previously found:  Doe's own allegations plead her out of court by acknowledging the University's prompt and thorough responses.

All defendants named in Doe's original Complaint consented to Doe's amended pleading while expressly reserving their rights to bring this motion, so that the parties can avoid piecemeal litigation and gain clarity about what claims are properly part of this case before proceeding to discovery on the remanded claim.  Through this partial motion to dismiss, Defendants Syracuse University, John Wildhack, John Desko, and Kayla Treanor seek dismissal of all claims in the FAC except the remanded Title IX retaliation claim and a parallel retaliation claim newly asserted under state anti-discrimination law.  The other claims are nothing more than an end-run around the prior decisions in this case, and each fails to state a claim under Rule 12(b)(6).

*First*, the FAC fails to state a claim for breach of contract.  Although New York law recognizes an implied contractual relationship between a university and its students, alleging breach of contract requires a student to identify a concrete and specific promise on which the university failed to deliver.  The FAC comes nowhere close to meeting that standard: it merely gestures at various policy documents without citing a single provision that constitutes a contractual term, much less one that the University breached.  Indeed, decisions from this District have repeatedly rejected breach-of-contract claims like this one in other cases against the University.

*Second*, the FAC fails to state a negligence claim.  New York law carefully limits the circumstances in which colleges and universities have duties of care to their students.  This forbearance reflects the sound judgment that there is no *in loco parentis* liability for post-secondary institutions and that other causes of action are better vehicles for defining institutional obligations. Doe's theories of negligence ignore the law's careful limits and allege that virtually everything Defendants did (or purportedly failed to do) during her enrollment breached some undefined duty

2

of care.  Case law forecloses each of Doe's theories, which range from negligent investigation to failure to prevent harm to inadequate hiring, training, and supervision.  Doe also cannot pursue a separate cause of action for "respondeat superior" as asserted in the FAC:  New York law does not recognize such a claim and, in any event, it rests on her deficient allegations of negligence.

*Third*, the FAC fails to state a claim for negligent infliction of emotional distress.  Doe's sole theory in support of this claim is that although the University promptly relocated her housing after an April 2021 incident involving the male student with whom she had a relationship, the relocated housing was "only a few buildings away from her prior residence" and so she feared for her safety.  Doe does not allege that she ever complained about the location, and she acknowledges that she had obtained orders from both the University and a court prohibiting further interaction between her and the male student.  The Syracuse University campus is not unbounded in any event.  Doe's contention that the University's actions in this regard were "extreme and outrageous" has no support in New York law.

Each of these claims should be dismissed with prejudice, and this action should move forward only on the retaliation theory remanded to this Court by the Second Circuit.

## BACKGROUND

### A.    Doe's Reports And The University's Responses

The FAC, like Doe's original Complaint, centers on the University's responses to reports Doe made in January and April 2021 about misconduct by fellow student Chase Scanlan, with whom she had an "on-again-off-again relationship" starting in February 2020.  ECF No. 56 ("FAC") ¶ 31.  The FAC concedes that Doe did not notify the University or its personnel about Scanlan's alleged misconduct or seek assistance until January 2021.  *Id.* ¶ 39.

On January 3, 2021, Doe requested a meeting with an assistant coach, which took place the following day. *Id.* ¶¶ 40-41. The assistant coach offered immediate assistance to Doe upon hearing her concerns about Scanlan, including allowing Doe to stay with her. *Id.* ¶ 45. The assistant coach also informed her superiors, who relayed Doe's report to the University's Title IX office. *Id.* ¶¶ 46-47. Doe then met multiple times with a Title IX Case Coordinator. *Id.* ¶¶ 49-53. The Case Coordinator provided Doe with the University's Sexual Harassment, Abuse, and Assault Prevention Policy; explained a range of resources available to Doe, including safety escorts and counseling; described the process for initiating a complaint; and assigned Doe a case manager from the Dean of Students office. *Id.* ¶ 48. Doe requested a No Contact Order on January 20, which the University promptly issued on January 22. *Id.* ¶¶ 51, 56. Although Doe asked the University to rescind the Order shortly thereafter, *id.* ¶ 62, the University instead left the Order in place for several weeks before calling Doe in March to confirm that she wanted the Order removed and felt safe. *Id.* ¶¶ 64-65, 67. Doe did not report any additional issues with Scanlan until April 18.

The FAC alleges that on the night of April 17-18, Scanlan assaulted Doe and damaged her cell phone. *Id.* ¶ 1. When Doe's mother contacted an assistant coach because she could not reach Doe, her concern was promptly relayed to other University personnel, who took steps to contact Doe and determine her status. *Id.* ¶¶ 93-109. Department of Public Safety (DPS) personnel were also dispatched to Doe's apartment, where they interviewed Doe's roommate, Doe, and Scanlan, with a female officer taking Doe aside when she requested to recount the prior night's events away from Scanlan. *Id.* ¶¶ 110-126. That day, DPS officers issued No Contact Orders to prevent further contact between Doe and Scanlan, *id.* ¶ 144, and the Title IX Case Coordinator contacted Doe the following day to offer supportive measures and describe Doe's options for pursuing the University's Title IX process, *id.* ¶¶ 165-166. After several additional meetings with Doe, she

decided not to file a Title IX complaint, *id.* ¶¶ 167-176, 186-198, and the University immediately initiated one itself, *id.* ¶¶ 198-199.  The University also coordinated with local law enforcement, which was made aware of Doe's report within days.  *Id.* ¶¶ 153-154.  Doe received a criminal order of protection against Scanlan, *id.* ¶ 245, and Scanlan was ultimately arrested on May 7, *id.* ¶ 7.

### B.    Prior Proceedings

Doe filed this action in August 2021 against Syracuse University and two of its employees, John Wildhack and John Desko.  ECF No. 1.  Her Complaint asserted four theories of liability under Title IX, as well as state-law negligence claims.  The original defendants moved to dismiss the Complaint, arguing that Doe failed to state a Title IX claim and that the court should decline to exercise supplemental jurisdiction over the state-law claims.  ECF Nos. 5 & 5-1.

In September 2022, the court granted the motion to dismiss in its entirety.  Reviewing the Complaint's allegations "in the light most favorable to [Doe]," ECF No. 32 ("MTD Decision") at 2 n.2, the court concluded that Doe did not plausibly allege a violation of Title IX.  First, although Doe accused the University of deliberate indifference when she first reported misconduct by Scanlan in January 2021, the Complaint's own allegations confirmed that "Syracuse fully informed Doe of her rights under Title IX after she informed them of Scanlan's dangerous behavior, including her ability to file an official complaint, and the fact that she could have a [No Contact Order] put in place, a right she chose to exercise, all in accordance with the Department of Education's Title IX regulations."  *Id.* at 15-16 (internal citations omitted).  Moreover, the court explained, the University rescinded the No Contact Order—as Doe herself requested—only *after* the University verified that Doe felt safe.  *Id.* at 16-17.

The court also rejected Doe's deliberate indifference claim based on the University's response to the April 2021 incident with Scanlan.  *Id.* at 17-19.  Although Doe criticized the actions

of DPS officers, the court recognized that they responded to the scene promptly, interviewed the relevant parties, and immediately issued another No Contact Order—and that state and local law enforcement were appropriately informed of the incident within days, which did not constitute "a lengthy or unjustified delay."  *Id*. at 6-7, 18-19.  In addition, Doe's criticisms about Scanlan's reinstatement to the lacrosse team after an interim suspension were insufficient:  Doe herself acknowledged that the University conducted a threat assessment of the situation and pursued a formal complaint against Scanlan even after Doe declined to file one.  *Id*. at 19-20.  In that context, Doe's demands for "specific remedial measures" from the University amounted to impermissible "second-guessing" of disciplinary decisions appropriately entrusted to administrators.  *Id*.

In addition, the court dismissed Doe's Title IX claims based on hostile environment and retaliation.  With respect to hostile environment, the court explained that Doe's allegations did not establish a key element: that the University either failed to act in response to her reports or responded in a clearly unreasonable way.  *Id*. at 20 n.3.  As for retaliation, the court examined the two conversations with Athletics Department staff on which Doe based her claim, both of which took place after Doe herself expressed an interest in potentially transferring to another institution.  *Id*. at 20-22.  The court concluded that neither rose to the level of an "adverse action" under Title IX.  *Id*.  Finally, having dismissed the federal claims that created original jurisdiction, the court declined to exercise supplemental jurisdiction over the state-law claims.  *Id*. at 22.

Doe appealed to the Second Circuit, which agreed that Doe "failed to state claims for deliberate indifference and hostile environment under Title IX."  *Doe v. Syracuse Univ.*, No. 22-2674, 2023 WL 7391653, at *1 (2d Cir. Nov. 8, 2023).  Starting with the University's response to Doe's January 2021 report, the Second Circuit ruled that Doe's own allegations demonstrated its appropriateness.  The University: (1) "promptly provided Doe with information about its policies,

6

resources (including safety escorts and counseling), and the complaint process; set up virtual meetings to discuss her situation; and sent follow-up emails to check in with Doe and to offer further support"; (2) "promptly entered a No Contact Order … binding Scanlan, the remedy that Doe herself selected"; (3) "provided Doe with the relevant policy explaining the process of filing a complaint, individually, or by SU on her behalf and at its discretion"; (4) followed Title IX regulations by "declining to conduct an independent investigation after Doe decided not to pursue further action"; and (5) waited six weeks after Doe requested removal of the No Contact Order— and confirmed she "wanted [it] removed" and "felt safe"—before lifting it.  *Id*. at *2.

The Second Circuit likewise rejected Doe's claim based on the University's response to the April 2021 incident.  It recognized that DPS officers responded to the scene; state and local law enforcement were notified of the incident within approximately one week; the University immediately imposed a new No Contact Order and contacted Doe "[t]he next day" after the incident about how she wanted to proceed; and "[a]lmost immediately after [Plaintiff] declined to file a formal complaint, the University's Title IX officer "independently initiated" one.  *Id*. at *3. Critically, Doe "fail[ed] to allege that the remedial measures instituted by [the University] were ineffective" in terms of addressing her report and keeping her safe.  *Id*. at *2.

The Second Circuit also affirmed dismissal of Doe's hostile environment claim, precisely because Doe failed to establish the University's deliberate indifference to her reports.  *Id*. at *3. Nor was the district court required to give Doe another shot at pleading these Title IX claims:  Doe "fail[ed] to specify the additional allegations she would include in an amended complaint, and she d[id] not explain how an amendment would cure the deficiencies in her pleadings."  *Id*. at *4.

The Second Circuit disagreed with the district court only as to the Title IX retaliation claim. It held there were "questions of fact" as to whether the two relevant employees "made the alleged

threats" and whether they "threatened Doe in connection with the exercise of Doe's protected rights," which precluded resolution of the claim at the motion-to-dismiss stage. *Id*. at *3. The Second Circuit thus "vacate[d] the district court's dismissal of Doe's retaliation claim and remand[ed] for further proceedings on that claim." *Id*. at *4 (capitalization and emphasis omitted).

### C.      Doe's First Amended Complaint

On February 26, 2024, Doe filed her First Amended Complaint. The original defendants consented to the amendment on terms outlined in a stipulation endorsed by the court, including reserving their rights to bring this motion to dismiss. *See* ECF Nos. 53 & 55. The FAC maintains the remanded Title IX retaliation claim and asserts various causes of action under state law. FAC ¶¶ 370-435. It also names two additional defendants: Kayla Treanor, the Head Women's Lacrosse Coach, and Kimberly Keenan-Kirkpatrick, the former Deputy Athletics Director. *Id*. ¶¶ 19, 21. This motion to dismiss by Defendants Syracuse University, Wildhack, Desko, and Treanor (collectively, "Defendants") addresses four of the FAC's claims:

*Breach of contract (Count VI).*  The FAC alleges that Doe entered into an implied contract with the University that incorporated its "Student Handbook" and "Title IX Policy," and that the University breached that implied contract in various ways through its response to the April 2021 incident between Doe and Scanlan. *Id*. ¶¶ 428-434.

*Negligence and vicarious liability (Counts II & III).*  The FAC alleges that the University and Defendants Desko, Wildhack, and Keenan-Kirkpatrick breached duties of care they owed to Doe. *Id.* ¶¶ 381-396, 398-407.  According to the FAC, these legal duties arise from New York's "Enough is Enough" law, "Plaintiff's status as a student athlete," the University's recruitment of Scanlan, and a general obligation to properly hire, train, and supervise personnel. *Id.* ¶¶ 382-384, 389-390.  The FAC alleges 22 different breaches of these purported legal duties, spanning from

when Scanlan was recruited to when Doe ultimately decided to transfer to another institution.  *Id.* ¶¶ 391(a)-(g), 392(a)-(o).  It takes aim at virtually every aspect of the University's actions vis-à-vis Doe and Scanlan across that timeframe, including the propriety of the University's responses to her January and April 2021 reports.  *See id.*

  **Negligent infliction of emotional distress (Count IV).**  The FAC alleges that the University and Defendants Desko and Wildhack breached duties of care they owed to Doe when, in response to the April 2021 incident, they relocated Doe's housing for safety reasons but moved her "only a few buildings away from her previous residence."  *Id*. ¶¶ 409-414.  According to the FAC, these actions were "extreme and outrageous" and caused "severe emotional harm."  *Id*. ¶¶ 413-414.

  In light of the Second Circuit's decision, Defendants do not seek dismissal of the Title IX retaliation claim (Count I) or the parallel retaliation claim now asserted under state law (Count V).  Discovery is stayed on all claims until this motion is resolved, ECF No. 51, and Defendants have no obligation to answer the original or amended pleadings until that time, ECF Nos. 55 ¶ 8 & 60.

## STANDARD OF REVIEW

  "To survive a motion to dismiss, a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This standard requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  While the court must credit all well-pleaded factual allegations, it is "not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions."  *In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 159 (2d Cir. 2015) (quotation marks omitted) (alteration in original).  "Threadbare recitals of the elements of a cause of action" are insufficient, and the

facts alleged must be "plausibly sufficient to state a legal claim." *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 401-02 (N.D.N.Y. 2019) (quotation marks omitted). Moreover, "even if all of the allegations contained in a complaint are true," a complaint must nonetheless be dismissed if the claims "fail[] as a matter of law." *Wojchowski v. Daines*, 498 F.3d 99, 106 (2d Cir. 2007).

## ARGUMENT

### I.     The FAC Fails To State A Claim For Breach Of Contract.

Doe does not and cannot state a breach-of-contract claim based on the University's response to the April 2021 incident, the sole basis for that claim. *See* FAC ¶ 434. The FAC's allegations regarding breach of contract fail to identify *any* policy provision that the University purportedly breached, much less a provision that is sufficiently concrete and specific to constitute a contractual promise.

"Under New York law, an implied contract is formed when a university accepts a student for enrollment." *Meissner v. Syracuse Univ.*, No. 5:20-CV-839, 2021 WL 1536676, at *3 (N.D.N.Y. Apr. 13, 2021) (quoting *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011)). But "[t]he application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student." *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 359 (N.D.N.Y. 2014) (quotation marks omitted). To state a claim for breach of the implied contract, "a student must identify specific language in the school's bulletins, circulars, catalogues and handbooks which establishes the particular 'contractual' right or obligation alleged by the student." *Marbury v. Pace Univ. (In re Columbia Tuition Refund Action)*, 523 F. Supp. 3d 414, 421 (S.D.N.Y. 2021) (quotation marks and alteration omitted). In addition, the student must allege "when and how the defendant breached the specific contractual promise" at issue. *Moore v. Long Island Univ.*, No. 2:20-CV-3843, 2022 WL 203988, at *4 (E.D.N.Y. Jan.

24, 2022) (quotation marked omitted).  Based on these established principles, "courts in the Second Circuit applying New York law uphold contract claims based on specifically enumerated unfulfilled promises," but "have rejected claims based on more general promises." *Id.* (collecting cases).  In particular, a student cannot derive an actionable promise from "general policy statements" or "broad and unspecified procedures and guidelines." *Ward v. N.Y. Univ.*, No. 99-CV-8733, 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000).

This District has repeatedly confronted and rejected claims like Doe's based on supposed promises in Syracuse University's Handbook and Title IX policy.  In *Noakes v. Syracuse University*, a student claimed that the University violated provisions of the Handbook and its "Bill of Rights" when it adjudicated a complaint of sexual misconduct.  369 F. Supp. 3d at 417-20.  In particular, the student alleged that he did not receive adequate notice of disciplinary charges and was denied a full and fair investigation.  *Id.* at 419.  "All of these alleged breaches," the court explained, "are the types of general statements of policy which New York law dictates cannot form the basis of a viable contract claim." *Id.*  The court therefore rejected the student's "attempt to transform dissatisfaction about the outcome of [a] hearing into a breach-of-contract cause of action" and granted the University's motion to dismiss.  *Id.* at 420.

*Doe v. Syracuse University* involved similar allegations and reached the same outcome. 341 F. Supp. 3d 125 (N.D.N.Y. 2018).  There, a student claimed that the University violated the same policies referenced in this case—including the Title IX Policy and the "Bill of Rights." *Id.* at 140-41.  The court granted the University's motion to dismiss, holding: "Provisions that students will be treated in a 'fundamentally fair' manner, or in a manner that is consistent with fundamental 'student rights,' are the sorts of non-actionable statements of general policy that courts applying New York law have held cannot support a breach of contract claim." *Id.* at 141.

In rare circumstances where courts have allowed breach-of-contract claims against the University, their decisions have relied on concrete and specific promises. For example, in *Doe #1 v. Syracuse University*, the students based their claims on detailed procedural provisions in the Student Handbook about interim suspension during a disciplinary case and related transcript notations. 468 F. Supp. 3d 489, 505-08 (N.D.N.Y. 2020) (relying on Student Handbook §§ 4.1, 4.2, 10.10, and 12.1). Similarly, this Court allowed a breach-of-contract claim in a case where the student pointed to specific provisions of the Student Rights and Responsibilities and the Student Conduct Procedures, which included "the guarantee of the preponderance of evidence standard during a Conduct Board hearing." *Doe v. Syracuse Univ.*, No. 5:18-CV-377, 2019 WL 2021026, at *11 (N.D.N.Y. May 8, 2019). Taken together, these cases confirm that students cannot merely reference University policies and assert breach; they must identify specific provisions that make concrete promises and explain when and how the University allegedly breached them.

Doe's allegations here fall far short of that pleading standard. In asserting breach of contract, the FAC gestures at "the SU Handbook" and "SU's Title IX Policy," without identifying a single provision of either document. FAC ¶¶ 429-430. That alone is fatal to Doe's claim: "[n]ot all terms" in these types of documents "are enforceable contractual obligations," *Rolph v. Hobart & William Smith Colleges*, 271 F. Supp. 3d 386, 406 (W.D.N.Y. 2017) (quotation marks omitted), and so courts will not intervene "without the identification of a specifically breached promise or obligation," *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998). Moreover, many provisions in policies like these cannot sustain breach-of-contract claims as a matter of law: "General statements of policy or broad pronouncements of a University's compliance with existing anti-discrimination laws, promising equitable treatment of all students cannot provide the basis for

a breach of contract claim." *Doe v. Union Coll.*, No. 1:19-CV-284, 2020 WL 1063063, at *8 (N.D.N.Y. Mar. 5, 2020) (quotation marks omitted).

The reason why the FAC neglects to identify specific policy provisions in support of this claim is that the policies simply do not sustain Doe's theories of breach. According to the FAC, the University committed ten distinct "breaches" of unspecified policy provisions through its response to the April 2021 incident. FAC ¶ 434(a)-(j). Many relate to alleged shortcomings when DPS officers responded to the scene on April 18, 2021, including not interviewing Doe "properly," failing to ascertain certain information at that first encounter, and neglecting to offer her "same-day safety measures and accommodations *besides providing Plaintiff with a mutual No Contact Order and an informational flier about domestic violence.*" *Id.* ¶ 434(a)-(f) (emphasis supplied). Doe also accuses the University of failing to consider the April 2021 incident "in light of" other information—though she does not say who failed to consider what or when. *Id.* ¶ 434(g). In addition, Doe criticizes the University's coordination with state and local law enforcement, *id.* ¶ 434(h)-(i), and its alleged "under-report[ing of] the events of the Scanlan Assault," *id.* ¶ 434(j).

Not one of those "breaches" has a basis in the University's policies, nor does Doe cite any. The highly subjective nature of several of these theories—like whether Doe was "properly interview[ed]" or context was "properly consider[ed]," *id.* ¶ 434(a), (g)—only underscores that they are "challenges to determinations within the wide discretion of the university," not "a genuine breach of a contract." *Chira v. Columbia Univ. in N.Y.C.*, 289 F. Supp. 2d 477, 485-86 (S.D.N.Y. 2003). Accordingly, Doe's breach-of-contract claim should be dismissed.

## II.   The FAC Fails To State A Claim For Negligence.

Just as Doe's criticisms do not rise to the level of a contractual breach, they do not state a negligence claim either. The FAC asserts that virtually everything the University did from the

time it recruited Scanlan through the time Doe transferred to another school breached unspecified "duties" under New York law.  *See* FAC ¶¶ 380-407.  But negligence is not a catch-all claim for generalized grievances.  Doe must allege that: "(1) the defendant owed [her] a cognizable duty of care; (2) the defendant breached that duty; and (3) [she] suffered damage as a proximate result." *Noakes*, 369 F. Supp. 3d at 420 (quotation marks omitted).  "The existence of a duty is a question of law to be decided by the court."  *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997). The FAC does not and cannot allege any cognizable duty that was breached by Defendants here.

### A.  New York Law Recognizes Only Limited Circumstances Under Which Students May Bring Negligence Claims Against Their Universities.

In *Eiseman v. State*, the Court of Appeals established that "colleges today in general have no legal duty to shield their students from the dangerous activity of other students."  70 N.Y.2d 175, 189-90 (1987).  This distinguishes universities from lower schools, which "are under a special duty of *in loco parentis*, meaning that they must adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision."  *Hammond v. Lincoln Tech. Inst., Inc.*, No. 1:10-CV-1933, 2012 WL 273067, at *6 (E.D.N.Y. Jan. 30, 2012) (internal quotation marks omitted).  For a university to be held liable in negligence, it must owe a particular student a *specific* duty.  *Eiseman*, 70 N.Y.2d at 190.  *Eiseman* identified examples, like if "there is a special relationship with a student" or if the institution "fail[s] to maintain school premises."  *Id.* at 190 n.3 (citing *Miller v. State*, 62 N.Y.2d 506 (1984)).

Courts confronting negligence claims in the context of sexual misconduct allegations have been especially cautious about imposing duties on universities as a matter of law.  In *Doe v. Union College*, for example, a female student brought Title IX, breach-of-contract, and negligence claims against the college and various employees based on their handling of her report of sexual misconduct.  The court rejected her negligence claim, holding that "a college has no legal duty to

protect students from being sexually assaulted by other students," and that the plaintiff "failed to allege that her relationship with University defendants went beyond that of a university and its student."  2020 WL 1063063, at *7.

Nor have courts allowed students to evade this body of common law through reliance on the state's "Enough is Enough" statute.  Doe contends that the legal duties the University breached include "[t]he duty of care . . . outlined in Article 129-B of NY CLS Educ Law."  FAC ¶ 382.  The statute, enacted in 2015, requires institutions to certify their compliance with various provisions related to addressing sexual misconduct and campus climate and to furnish certain rules and policies to the State Education Department.  N.Y. Educ. Law § 6440(1).  It expressly disclaims any private right of action.  *Id.* § 6440(9).  The statute does not set the standard of care for purposes of a negligence claim or otherwise supersede existing law limiting a university's duty.  *See, e.g.*, *Doe v. Hobart & William Smith Colls.*, 546 F. Supp. 3d 250, 269 (W.D.N.Y. 2021) (rejecting negligence claim premised on this statute as "wholly inconsistent with well-established case law").

Of course, students disappointed with how their universities handle sexual misconduct allegations have other recourse better suited to that context.  When universities fail to comply with Title IX and its implementing regulations, students can bring complaints to the U.S. Department of Education's Office for Civil Rights, *see* 34 C.F.R. §§ 106.44-106.45, and, in many cases, file suit in federal court, *see, e.g.*, *Posso v. Niagara Univ.*, 518 F. Supp. 3d 688 (W.D.N.Y. 2021).  In addition, when universities fail to deliver on specific promises made to students in their own policies, students can bring claims for breach of contract.  *See supra* at 10-13.  But imposing broad tort duties on institutions based on their response to potential or actual sexual misconduct has no basis in *Eiseman* or its progeny and risks a collision between federal and state law.

15

**B.**    **Doe Cannot Ground A Negligence Claim In The University's Investigation.**

The FAC asserts that virtually every aspect of the University's investigation into Doe's reports was negligent, FAC ¶¶ 391(f)-(g), 392(b)-(d), 392(f)-(n), but "New York State Law does not recognize a claim [against a college or university] for negligent investigation or prosecution," *Doe v. Syracuse Univ.*, 440 F. Supp. 3d 158, 181 (N.D.N.Y. 2020) (quotation marks omitted).  Nor is there any "duty of reasonable care in [a college or university's] response to a student's misconduct."  *Silman v. Utica Coll.*, No. 6:14-CV-432, 2016 WL 2016 WL 4275721, at *11 (N.D.N.Y. Aug. 12, 2016).  Under a straightforward application of this law, Doe's fundamental contention that her reports were not "adequately investigated," FAC ¶ 392(m), is not cognizable as negligence as a matter of law.  *See, e.g.*, *Noakes*, 369 F. Supp. 3d at 421 (granting motion to dismiss claim for negligent investigation); *Hobart & William Smith Colls.*, 546 F. Supp. 3d at 269 (same); *Doe v. Syracuse Univ.*, 341 F. Supp. 3d at 141-42 (same).

This case exemplifies why courts do not and should not recognize negligence claims in this context.  Doe seeks to hold Defendants liable in negligence for alleged omissions that were contrary to federal regulations in effect at the time.  *See* 34 C.F.R. § 106.6 (detailing preemptive effect of Title IX regulations on conflicting state or local laws).  For example, Doe contends that the University was negligent when it declined to investigate Scanlan in January 2021, notwithstanding that she chose not to pursue a complaint.  FAC ¶ 392(b), (c), (f).  But the Title IX regulations imposed no requirement on institutions to conduct formal investigations against a student's wish not to submit a formal complaint, *cf.* 34 C.F.R. § 106.45(b)(3)(i), recognizing that "[a] rigid requirement such as an investigation in every circumstance may chill reporting of sexual harassment," *see Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026, 30,189-90 (May 19, 2020). Similarly, Doe's suggestion that the University should have suspended Scanlan immediately and

kept him off the lacrosse team even after the threat assessment is contrary to Title IX's regulations affording various rights and protections to an accused student. *Compare* FAC ¶¶ 178-183, *with* 34 C.F.R. §§ 106.44(a), (c). In essence, Doe's theory of negligence would force universities into an impossible choice: comply with Title IX but incur negligence liability, or disregard federal anti-discrimination law to avoid state negligence claims. That is not the law, and for good reason.

Finally, Doe's negligence theories related to the University's responses are barred because they duplicate her claim for breach of contract. *Compare* FAC ¶¶ 391-392, *with id.* ¶ 434. Courts "routinely dismiss tort claims where they are duplicative of a simultaneously pled breach of contract claim," including where, as here, a plaintiff alleges that a university or its employees negligently conducted an investigation into reports of sexual misconduct. *Prasad v. Cornell Univ.*, No. 5:15-CV-322, 2016 WL 3212079, at *23 (N.D.N.Y. Feb. 24, 2016); *accord Rolph*, 271 F. Supp. 3d at 409; *Faiaz*, 64 F. Supp. 3d at 362. This case warrants the same result.

## C.   Defendants Did Not Breach Any Duty To Prevent Scanlan's Misconduct.

Doe also claims that Defendants should have prevented Scanlan's misconduct in the first place. FAC ¶¶ 391(b)-(e), 392(e). This claim runs headlong into *Eiseman*, 70 N.Y.2d at 182-83, 190-92, and the "general rule[ that] a college has no legal duty to protect students from being sexually assaulted by other students," *Union Coll.*, 2020 WL 1063063, at *7.

The fact that Scanlan was an athletic recruit does not render the University liable for his actions both on and off the field. *Contra* FAC ¶¶ 384, 391(b), 392(a). Nor does the fact that Doe was a student-athlete establish that the University owed her a special duty of care off the field. *Contra id.* ¶ 383. The case law recognizing legal duties for universities in student activities applies narrowly to circumstances where the institution itself sponsors, coordinates, and controls the activity. *See, e.g.*, *Hores v. Sargent*, 230 A.D.2d 712, 713 (2d Dep't 1996) (school-organized bicycle trip); *Cooper v. State*, 89 A.D.2d 811, 811 (4th Dep't 1982) (school-organized prison visit).

This duty does not extend to independent activity by students on campus.  *Lloyd v. Alpha Phi Alpha Fraternity* demonstrates this distinction.  There, the court held that a university owed no duty to a student harmed in a fraternity pledge process, even where the university "attempted to monitor fraternity conduct, intervened in the fraternity pledge process, [and] permitted the use of its premises for fraternity activities," among other things.  No. 5:96-CV-348, 1999 WL 47153, at *3 (N.D.N.Y. Jan. 26, 1999).  As the court explained, those actions did "not rise to the level of encouraging and monitoring pledge participation."  *Id.*  Put another way, "[t]he 'control' discussed in the case law involves activities over which the college exercised control and supervision, and where the plaintiff is physically injured during the activity."  *Faiaz*, 64 F. Supp. 3d at 362 (collecting cases).  The allegations here come nowhere close to meeting that standard.

In addition, the fact that Doe made an initial report in January 2021 does not render the University liable in negligence for anything that followed.  *Brown v. University of Rochester* is a useful comparator.  There, the plaintiff alleged that she was sexually assaulted on two occasions at the same on-campus fraternity, and that the university had previously failed to "notify authorities or conduct proper investigations" into credible reports that the fraternity had a practice of drugging alcoholic beverages to incapacitate female students.  216 A.D.3d 1328, 1328-29 (3d Dep't 2023).  The court recognized that there is no general "legal duty to shield . . . students from the dangerous activities of other students."  *Id.* at 1331 (quotation marks omitted).  The court nonetheless found a legal duty based on the unique circumstances alleged, namely the university's receipt of "credible reports of *ongoing and pervasive criminal conduct* against students, perpetrated on campus by other students within the university's control."  *Id.* at 1332 (emphasis supplied).

The allegations here stand in stark contrast to *Brown*.  Unlike the plaintiff in *Brown*, Doe did not alert the University of "ongoing and pervasive criminal conduct" against her.  After she

initially reported Scanlan's alleged misconduct in January 2021, she declined to pursue a complaint against him. FAC ¶¶ 40-56; MTD Decision at 15-16. Moreover, while she requested a No Contact Order and the University immediately imposed one, she soon insisted that the Order was unnecessary and that she felt safe. FAC ¶¶ 62, 64-65; MTD Decision at 16-17. Doe therefore gave the University no basis to conclude that Scanlan's misconduct was ongoing or pervasive.

Moreover, even if Defendants had a duty in this context, the FAC's own allegations establish that they fully discharged it. Case law makes clear that in the rare instances where a duty exists to take steps to prevent harm by third parties, a tort defendant is not required to have done *everything it conceivably could* to prevent a particular harm. Instead, where a duty exists, courts have looked to whether a defendant took "minimal precautions" to prevent a "foreseeable harm." *P.R.B. v. State*, 201 A.D.3d 1237, 1239 (3d Dep't 2022) (quotation marks omitted); *see also Brown*, 216 A.D.3d at 1332 (requiring "appropriate responsive action"). Here, Defendants acted reasonably and promptly once Doe reported misconduct by Scanlan, as the Second Circuit detailed in its decision. *See supra* at 6-7. Doe's allegations to the contrary center on quibbles with the University's response. *See, e.g.*, FAC ¶ 392(d), (g), (h). But, as the Second Circuit recognized, Doe is merely faulting Defendants for not imposing her preferred remedial measures. 2023 WL 7391653, at *2-3. Just as her preferences cannot ground a Title IX claim, they cannot ground a claim for negligence, *see Eiseman*, 70 N.Y.2d at 192 (rejecting inquiry into "whether a college might or even should investigate and supervise its students differently"). By Doe's own allegations, Defendants took at least "minimal precautions" to prevent potential harm by Scanlan.

### D. Doe's Theory Based On Negligent Hiring, Training, Retention, And Supervision Fails For Additional Reasons.

Doe also alleges that Defendants failed to hire, train, supervise, or appropriately sanction personnel. FAC ¶¶ 389-390, 391(d), 392(e), 392(h), 399. This theory requires Doe to allege, "in

addition to the standard elements of negligence," that "(1) the tort-feasor and the defendants were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations omitted) (negligent retention and supervision); *see also Blazquez v. City of Amsterdam*, No. 1:21-CV-1286, 2023 WL 2164516, at *8 (N.D.N.Y. Feb. 22, 2023) (negligent hiring, training, supervision, and retention).  The FAC fails to state a claim under this theory.

Doe appears to assert this claim not just against the University, but also against Defendants Desko and Wildhack.  But Doe does not identify how their conduct relates to the allegedly wrongful conduct of other employees, which defeats her claim.  *See Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 130 (2d Cir. 2023) (holding that where a negligent supervision claim is brought against a defendant other than an employer, the plaintiff must at minimum show "a high degree of control over the principal tortfeasors").  So, too, do the FAC's vague allegations that make it impossible to separate out any individual defendant's involvement in the allegedly negligent conduct.  *See, e.g.*, *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 513 n.3 (S.D.N.Y. 2018).

In addition, this theory of negligence is "unavailable where the plaintiff was wronged by an employee acting within the scope of his employment." *Ahluwalia v. St. George's Univ.*, 626 F. App'x 297, 299-300 (2d Cir. 2015).  Where an employee acting negligently did not act outside the scope of employment, the proper course is to hold an employer "vicariously [liable] under the theory of *respondeat superior*." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 129-30 (2d Cir. 2019) (quotation marks omitted) (negligent supervision and retention); *see also Shukla v. Deloitte Consulting LP*, No. 1:19-CV-10578, 2020 WL 3181785, at *14 (S.D.N.Y. June 15, 2020)

(negligent hiring, training, and supervision). Doe *herself* alleges that the relevant University employees were acting within the scope of their employment, defeating this theory. *See* FAC ¶ 405.

What's more, a plaintiff raising this theory must specifically allege "facts showing that [the employer] was on notice of its employees' 'propensity to commit the conduct alleged,'" *id.* at 300 (quoting *Doe v. Goldweber*, 112 A.D.3d 446, 447 (1st Dep't 2013)), or that training was "faulty or inadequate" in some manner, *Wilson v. Diocese of New York of Episcopal Church*, No. 1:96-CV-2400, 1998 WL 82921, at \*4 (S.D.N.Y. Feb. 26, 1998). It is not enough to point to an employee allegedly contravening an employer's policies. *Id.*; *see also Richardson v. N.Y. Univ.*, 202 A.D.2d 295, 296-97 (1st Dep't 1994) (rejecting claim for deficient training or supervision on this basis). The FAC fails to allege that the University or any of its employees were aware of any employee's propensity to commit the alleged conduct underpinning Doe's claims. It straightforwardly fails as a result. *See AA by BB v. Hammondsport Cent. Sch. Dist.*, 527 F. Supp. 3d 501, 508 (W.D.N.Y. 2021); *Doe v. N.Y.C. Dep't of Educ.*, No. 1:21-CV-4332, 2023 WL 2574741, at \*5 (E.D.N.Y. Mar. 20, 2023).

Doe also seeks to hold Defendants liable for failure to adequately supervise *Scanlan* by virtue of his status as a student-athlete. *See* FAC ¶ 391(a), (b), (e). This theory fails for the simple reason that Scanlan was not an employee or independent contractor of the University. *See Capak v. Street Execs Mgmt.*, No. 1:20-CV-11079, 2021 WL 2666007, at \*4 (S.D.N.Y. June 29, 2021). In any event, it also collapses into Doe's broader theory that the University and its employees were required to monitor and supervise a student to proactively prevent him from harming other students. That theory fails for all of the reasons previously discussed. *See supra* at 17-19.

### E.      Doe's Separate Count For Respondeat Superior Must Be Dismissed.

Finally, Doe's separate count for respondeat superior, *see* FAC ¶¶ 397-407, must be dismissed because New York law does not recognize an independent cause of action for respondeat superior. *See Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011); *Farb v. Baldwin Union Free Sch. Dist.*, No. 2:05-CV-0596, 2006 WL 8439500, at *11 (E.D.N.Y. Mar. 3, 2006).  In any event, this claim hinges on the allegations of negligence discussed above that fail to state a claim.

## III.    The FAC Fails To State A Claim For Negligent Infliction Of Emotional Distress.

Doe's allegations are even weaker for her negligent infliction of emotional distress claim. This claim requires a plaintiff to adequately allege: "(1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Alaei v. State Univ. of N.Y. at Albany*, No. 1:21-CV-377, 2022 WL 4094450, at *9 (N.D.N.Y. Sept. 7, 2022) (quotation marks omitted).  Under the direct (as opposed to bystander) theory involved here, valid claims are rare, and examples of special circumstances in which courts have allowed this claim include where the plaintiff was misinformed that a loved one had died or given a negligent HIV misdiagnosis. *Baker v. Dorfman*, 239 F.3d 415, 421-22 (2d Cir. 2000).  Beyond special circumstances like those, plaintiffs state a claim only where they can show that the defendant's negligence "unreasonably endangered their physical safety or caused them to fear for their own physical safety." *Dolgas v. Wales*, 215 A.D.3d 51, 56-57 (3d Dep't 2023).  Fear is measured against an objective standard: "subjective fears are insufficient as a matter of law." *Alaei*, 2022 WL 4094450, at *10.

Two recent decisions from the education context illustrate these demanding standards.  In *Doe v. Union College*, a student alleged that the college failed to respond appropriately to her reports of sexual misconduct and brought claims against the university for violations of Title IX

as well as breach of contract, negligence, and negligent infliction of emotional distress.  2020 WL 1063063, at *1.  The court granted the college's motion to dismiss both of her negligence-based claims, concluding that she "failed to establish that defendants owed her a duty" in this context. *Id*. at *7.  The court also found that the plaintiff's allegations fell short of "extreme and outrageous conduct" by the college, as generally required for emotional distress claims under New York law. *Id*. (quoting *Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist*., 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010)).

Similarly, in *Dolgas v. Wales*, the Third Department rejected a negligent infliction of emotional distress claim pressed by former students who alleged abuse by a teacher.  215 A.D.3d at 56-57.  They contended that "the School District pressured them to remain silent about the abuse, never told their parents about it and continued to allow [the teacher] to have access to them." *Id*. at 57.  The court explained that even accepting those allegations, there was no indication "that plaintiffs' physical safety was endangered or that they feared for their own safety," meaning that "the negligent infliction of emotional distress cause of action was correctly dismissed." *Id*.

Like the students in those cases, Doe fails to state a claim here.  Her sole theory is that although the University provided her a housing relocation after the April 2021 incident, she was "relocated only a few buildings away from her previous residence."  FAC ¶ 412.  Defendants are not aware of any case recognizing a duty related to the particulars of a university housing relocation, much less a breach in circumstances remotely resembling these.  Doe's own allegations defeat such a claim—including that the University immediately imposed a No Contact Order, that a restraining order likewise prohibited further interaction between Doe and Scanlan, and that no further interaction between Doe and Scanlan in fact occurred. *Id*. ¶¶ 144, 240, 412, 434(f).  Given these allegations, Doe's bare assertion that Defendants engaged in "extreme and outrageous"

conduct, *id.* ¶ 413, simply is not plausible.  Nor could this Court conclude on these allegations that Defendants "unreasonably endangered [Doe's] physical safety or caused [her] to fear for [her] own physical safety." *Dolgas*, 215 A.D.3d at 56-57.  Any subjective fear that Doe experienced is not enough as a matter of law to sustain a claim for negligent infliction of emotional distress.

The Second Circuit's decision also compels this conclusion.  It determined that the University's response to the April 2021 incident was not "clearly unreasonable."  2023 WL 7391653, at *2-3.  "Critically," the court explained, "Doe fail[ed] to allege that the remedial measures instituted by SU were ineffective," particularly given that there was no "subsequent harassment" of Doe whatsoever. *Id.* at *2.  If a remedial response is not clearly unreasonable, then by simple logic it is not "extreme and outrageous" either.  Doe's assertion of this claim is nothing more than an end-run around the Second Circuit's binding decision.

Finally, the FAC's allegations about this cause of action included references to "federal and New York state law," "SU's Title IX Policy," and "Plaintiff['s] engage[ment] in a protected activity."  FAC ¶¶ 410-411.  Those allegations are wholly irrelevant to the elements of negligent infliction of emotional distress, *see supra* at 22, and only confirm that Doe is attempting to use negligence law as a catch-all for theories she tried but failed to plead under the appropriate causes of action.  Established law and public policy foreclose that approach.  *See, e.g.*, *Lauer v. City of New York*, 95 N.Y.2d 95, 103 n.1 (2000) ("This Court has been especially reluctant to broaden the concept of duty where, as here, the injury alleged is negligently inflicted emotional injury.").

## IV.    These Claims Should Be Dismissed With Prejudice.

This Court should dismiss these claims without granting leave for yet another amendment.  The problems with many of Doe's theories run deeper than "pleading error"; they are deficient as a matter of law. *D'Entremont v. Atlas Health Care Linen Servs., Co., LLC*, No. 1:12-CV-0060,

2013 WL 998040, at *10 (N.D.N.Y. Mar. 13, 2013).   There are no additional facts Doe could allege in a subsequent amended complaint that would allow these claims to survive dismissal, rendering amendment futile.  *See In re Trib. Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021).   Moreover, Doe originally filed this case over two years ago and has already amended her pleading once.   There is "no reason to grant [Doe] a third bite at the apple" before litigation proceeds on the narrow retaliation theory that the Second Circuit remanded to this Court.  *Novartis Pharma AG v. Regeneron Pharms., Inc.*, 582 F. Supp. 3d 26, 46 (N.D.N.Y. 2022).

## **CONCLUSION**

For these reasons, the Court should dismiss Counts II, III, IV, and VI with prejudice.

Dated: March 18, 2024

Respectfully submitted:

/s/ David W. DeBruin
David W. DeBruin
N.D.N.Y. Bar. No. 603019
Lauren J. Hartz
N.D.N.Y. Bar. No. 701646
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Phone: 202-639-6000
Fax: 202-639-6066
ddebruin@jenner.com
lhartz@jenner.com

Allison N. Douglis
N.D.N.Y. Bar. No. 704713
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Phone: 212-303-2505
Fax: 212-891-1699
adouglis@jenner.com

*Counsel for Defendants Syracuse University,*
*John Wildhack, John Desko,*
*and Kayla Treanor*